# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# HUNTINGTON DIVISION

**WILLIAM JARRETT,**

    **Plaintiff,**

v.                                                                                                          Case No. 3:16-cv-09282

**WEST VIRGINIA DIVISION**
**OF PARDON AND PAROLE,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

On September 28, 2016, Plaintiff William Jarrett ("Jarrett"), proceeding *pro se*, filed a complaint under 42 U.S.C. § 1983, alleging wrongful acts on the part of the West Virginia Division of Pardon and Parole.[1] This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for total pretrial management and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3). Pending before the Court are Plaintiff's Application to Proceed Without Prepayment of Fees and Costs, (ECF No. 1), and the initial screening of Jarrett's amended complaint, filed on November 9, 2016. (ECF No. 7). Having now concluded a thorough screening of the complaint, amended complaint, and supporting documentation, (ECF Nos. 2, 4, 6, 7, 8, 9, 10, 11, 12), the undersigned **FINDS**

---

[1] Presumably, Jarrett refers to the West Virginia Parole Board, an independent board comprised of nine members appointed by the Governor of the State of West Virginia. W. Va. Code § 62-12-12.

that Jarrett fails to state a claim under 42 U.S.C. § 1983, because the defendant is not a "person" subject to suit under the statute. Accordingly, the undersigned **RECOMMENDS** that the presiding District Judge **DENY** Plaintiff's Application to Proceed Without Prepayment of Fees and Costs; **DISMISS** the complaint and amended complaint, with prejudice; and **REMOVE** this case from the docket of the court.

## I. Relevant Procedural History

On September 28, 2016, Jarrett filed a complaint in which he alleged that the West Virginia Parole Board ("the Board") used an incorrect address when providing Jarrett with documentation he requested from the Board. (ECF No. 2). He attached to the complaint a letter he sent to the United States Department of Justice recounting his difficulties in obtaining a copy of a "sentimental letter" that he supposedly wrote to the Board. (*Id.* at 2-3). Jarrett maintained that he had never written such a letter and when he insisted on seeing a copy, the Board claimed to have sent it to him. However, the address to which the Board claimed to have sent the letter was not Jarrett's correct address. (*Id.*). Jarrett alleged that the Board lied about the letter in the first instance and further lied about sending a copy to him.

On October 5, 2016, the undersigned issued an Order, explaining to Jarrett that his complaint failed to identify any cause of action against the Board, failed to state how his claim triggered federal jurisdiction, and failed to request any specific relief. (ECF No. 5). Accordingly, Jarrett was given forty-five days to amend his complaint and cure the deficiencies. Jarrett was advised that the named defendant was not a "person" under 42 U.S.C. § 1983, so he would need to name an individual or individuals that he believed violated his federal rights. Jarrett was also told that if he did not intend to assert a claim under § 1983, he needed to clarify the nature of his cause of action. Finally, Jarrett was

2

instructed to detail his alleged injury and state his request for relief. (*Id.*).

On November 9, 2016, Jarrett filed an amended complaint. (ECF No. 7). In the amended complaint, Jarrett continued to complain about the Board, naming only the Board as a defendant. He explained that he owned a residence in Huntington, West Virginia that was damaged by an individual named John Benson, who broke into the residence to steel copper. (*Id.*). The Huntington Police Department arrested Benson in the middle of the crime, and Benson was later convicted and sentenced in the Circuit Court of Cabell County, West Virginia. Jarrett attended the sentencing hearing.

Thereafter, in November 2013, Jarrett was advised by a prospective tenant that Benson had been released on parole. (ECF No. 4 at 2). Jarrett claims that he was not notified by the State of West Virginia, nor given an opportunity to attend the parole hearing. When he investigated the basis for Benson's parole, he was told by the Board that it had received a "sentimental letter" purportedly written by Jarrett, presumably in favor of Benson's release. As Jarrett had never written such a letter, he insisted on seeing a copy of it. Jarrett never received a copy of the letter and later learned from the Board that the copy was supposedly sent to the wrong address. (*Id.*).

Jarrett asserts that the State of West Virginia violated his civil rights by failing to notify him of the parole hearing and by not sending documentation to his correct mailing address, which was on file and available to the State through numerous sources. Jarrett also claims that the Board lied about receiving a letter from him and now refuses to admit its dishonesty and mistakes. Jarrett complains about the lack of assistance he has received from various state agencies in his quest to obtain a copy of the sentimental letter, indicating that there are two sets of rules in West Virginia: one for the citizens and one for the agencies. For relief, Jarrett asks for reimbursement from the State of West Virginia

3

for the damages done to his residence by John Benson. (ECF No. 7 at 9). Much of the supporting documentation filed by Jarrett reiterates the allegations contained in his complaint and amended complaint. He also provides copies of correspondence he has sent to various individuals and agencies, both State and Federal, seeking assistance in securing a copy of the letter, which he believes does not exist. (ECF Nos. 8, 9, 10, 11, 12).

## II. Screening Standard

When an individual files a complaint with an application to proceed *in forma pauperis*, the court must screen the tendered complaint to determine if any part of it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); *see also Thorne v. Huntington Police Dep't*, No. 3:12-6280, 2013 WL 2458544, at *2, *5 (S.D.W. Va. June 6, 2013). A case is "frivolous" if it lacks "an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A case lacks an arguable basis in law when it relies upon an indisputably meritless legal theory, *Denton v. Hernandez,* 504 U.S. 25, 32 (1992), and lacks an arguable basis in fact when the supporting allegations describe "fantastic or delusional scenarios." *Neitzke,* 490 U.S. at 328. Similarly, a complaint fails to state a compensable claim when viewing the factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint fails to contain enough facts to state a claim that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The United States Supreme Court further clarified the "plausibility" standard in *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009), stating that the Court is required to accept as true the factual allegations asserted in the complaint, but is not required to accept the legitimacy of legal conclusions that are "couched as ... factual allegation[s]." *Id.* at 678 (quoting *Bell Atlantic* Corp, 550 U.S. at 554). "Threadbare

4

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679.

Jarrett has filed his complaint *pro se*, and courts are required to liberally construe *pro se* complaints. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint must still contain sufficient factual allegations to support a cause of action currently cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). The court may not rewrite the complaint to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal theories for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III. Discussion

42 U.S.C. § 1983 provides a remedy to parties who are deprived of federally protected civil rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape,* 365 U.S. 167, 171-172. In order to state a viable claim under § 1983, a plaintiff must show that: (1) a person deprived him or her of a federally protected civil right, privilege, or immunity and (2) that the person did so under color of State law. *See American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-52 (1999).

In *Will v. Mich. Dept. of State Police,* the United States Supreme Court considered "the question whether a State, or an official of the State while acting in his or her official capacity, is a 'person' within the meaning of ... § 1983." *Id.*, 491 U.S. 58, 60 (1989). Examining the language and purpose of the statue, the Supreme Court ultimately concluded that Congress did not intend to subject States to liability for deprivations of civil liberties, when such suits would have been barred by the States' sovereign immunity. *Id.* at 66. The holding in *Will* applied not only to lawsuits against the State, itself, but also to suits against "public entities and political subdivisions" that were an "arm or alter ego" of the State. *Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (quoting *Moor v. Alameda County,* 411 U.S. 693, 717 (1973)).

Consequently, as a threshold matter, the court must consider whether the Board is an arm or alter ego of the State of West Virginia. If the Board is an arm or alter ego of the State, then Jarrett cannot maintain a federal civil rights complaint against the Board under § 1983, because that statute may only be used to file suit against a person. "In determining if a public entity is an alter ego of the state ... courts have generally looked to the standards announced in cases addressing whether governmental entities are entitled to Eleventh Amendment immunity as an arm of the state. *Id.* A review of relevant cases in West Virginia demonstrates that the Supreme Court of Appeals of West Virginia has already considered and settled this question with respect to the Board, confirming that the Board is, indeed, an arm of the State, entitled to its sovereign immunity. *See Parkulo v. W. Virginia Bd. of Prob. & Parole*, 483 S.E.2d 507, 513–14, n.2 (1996) (holding "The Board is an instrumentality of the State of West Virginia, created by law;" thus, the Board is entitled to sovereign immunity under the West Virginia Constitution).

In view of the Board's position as an arm of the State of West Virginia, the undersigned **FINDS** that the Board is not a "person" under § 1983. Therefore, Jarrett fails to state a claim against the Board for which relief may be granted. Given that there are no other defendants named in this action, the undersigned further **FINDS** that the complaint should be dismissed and the action removed from the docket of the court.

IV. <u>**Proposal and Recommendations**</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the presiding United States District Judge accept and adopt the findings herein and **RECOMMENDS** that the presiding Judge **DENY** Plaintiff's Application to Proceed Without Prepayment of Fees and Costs; **DISMISS** the complaint and amended complaint, with prejudice; and **REMOVE** this action from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if receipt by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140

(1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff, counsel of record, and any unrepresented party.

**FILED:** May 25, 2017

Cheryl A. Eifert
United States Magistrate Judge